UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ARTIE MAYNARD            )
                         )
v.                       )   NO. 1:05-CV-113
                         )   (CR. 1:01-CR-147)
UNITED STATES OF AMERICA )

**MEMORANDUM OPINION**

Artie Maynard, through his attorney, brings this motion to vacate, set aside or correct his sentence, 28 U.S.C. § 2255, challenging the constitutionality of his confinement under a 2002 judgment of this Court. Pursuant to his plea of guilty, the Petitioner was convicted of conspiring to possess with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. § 846 and § 841(a)(1). He, subsequently, was sentenced to 87 months of imprisonment, and his sentence was affirmed on appeal. *United States v. Maynard*, 94 Fed. Appx. 287, 2004 WL 784135 (6th Cir. Apr. 6, 2004).

In his motion, the Petitioner lists the four grounds for relief, which follow.

I. **UNJUST SENTENCE**

The Petitioner alleges he received a greater sentence than did his co-defendants, though they were involved in dealing greater amounts of drugs; were more involved in the conspiracy; and, generally speaking, were more culpable than he. Thus, he argues, he was sentenced unjustly. The Petitioner admits that this issue was not raised in his appeal.

Where an alleged error could have been asserted on direct appeal but was not, it is considered procedurally defaulted, and the Petitioner must demonstrate both "cause" for his failure to previously raise the issue and "actual prejudice" resulting from his failure to present the claim on direct appeal. *United States v. Frady,* 456 U.S. 152, 167-68 (1982).

Presumably, as his first offer of cause, the Petitioner alleges the issue was not readily apparent at the time of his conviction. The relevant issue with respect to such a claim of cause is whether the claim was available to raise on appeal (at the time of the procedural default), not whether it was available the time of conviction.

As his next offer of cause, the Petitioner asserts that his attorney, A. Christian Lanier, III, never raised this issue. The record, however, shows otherwise. Counsel claimed, on direct appeal, that this Court erred in refusing to reduce his client's base offense level for his "minimal or "minor" role in the conspiracy because the other defendants were higher in the distribution chain and because he was merely a low-level dealer. Though repackaged somewhat in his § 2255 motion,[1] the claim, in sum and substance, was presented and decided on appeal. Therefore, since counsel essentially raised this issue, the Petitioner has not shown his counsel was ineffective for failing to present the issue.

But even if the Petitioner could show cause, he has shown no prejudice. This is so because the United States Court of Appeals for the Sixth Circuit found no merit to his

---

[1] On appeal, the Petitioner contested his sentence based on an alleged error in applying the sentencing guidelines; in his § 2255 motion he challenges his sentence as inequitable. However, in both claims, the underlying arguments are the same.

2

allegations of error. In its opinion, the circuit court first pointed out that the Petitioner was sentenced only for the amount of drugs for which *he himself* was held accountable. *Maynard*, 94 F3d. Appx. 287, at *293-94 , 2004 WL 784135, at *6. It then pointed to the rule that a defendant is "not entitled to a mitigating role reduction if [he is] held accountable only for the quantities of drugs attributable" to his direct involvement and active participation in a conspiracy. *Id.*, 94 Appx. 287, at *294 , 2004 WL 784135, at *6 (quoting *United States v. Campbell*, 279 F.3d 392, 396 (6th Cir. 2002)). Finally, concluding the Petitioner's role in the conspiracy was neither "minimal" or "minor," the Sixth Circuit determined this Court had not erred by sentencing the Petitioner on the basis of the drugs he purchased. Certainly, imposing punishment on the basis of the Petitioner's own illicit drug purchases satisfies equitable principles.

To the extent this issue *was not raised* on appeal, no cause has been shown, and, given the above findings of the Sixth Circuit, no prejudice has been shown either.[2] Collateral review is now barred by the Petitioner's procedural default. *See Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). To the extent the issue *was raised* on appeal, it cannot be revisited in these § 2255 proceedings, unless the Petitioner shows exceptional

---

[2] A petitioner demonstrates prejudice by showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

circumstances. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir.1999). No such a showing has been made.

II. **MISTAKE IN THE PLEA AGREEMENT**

The Petitioner contends that, though the plea agreement specified he was to be held responsible for 50 grams or more of methamphetamine, there was no provision in the plea agreement to indicate he would be held responsible for more than the amount found in his home. (The amount of drugs which should have been attributed to him, according to his counsel's argument at the sentencing hearing, was 21 grams of methamphetamine, 7 of which were found in his home.) In a companion argument, he suggests he lacked the mental capacity to understand how the provisions in the plea agreement concerning the amount of drugs which he conspired to distribute would affect his sentence. The Petitioner concedes his claim was not raised on appeal, but again alleges defense counsel did not raise this issue because it was not readily apparent at the time of his conviction. And once again, the Petitioner's allegations about defense counsel's failure to raise this issue are belied by the record.

A. *Amount of Drugs Issue:* The quantity of methamphetamine for which the Petitioner was being held responsible (453.6 grams) was the subject of defense counsel's objection to the presentence investigation report and a hotly contested issue at the Petitioner's sentencing hearing. Defense counsel vehemently objected to the amount of drugs used to calculate his client's base offense level, on various legal bases, arguing the Petitioner should only be held responsible for a maximum of 21 grams. Sent. Hr'g Tr. at 13 -

4

46. The undercover narcotics agent who investigated the Petitioner's case was called to the stand to testify as to this issue.³ Ultimately, the Petitioner's objection was overruled, and his challenge to the drug amount was found frivolous. Sent. Hr'g Tr. at 46.

B. *Mental Capacity Issue*: Defense counsel also raised an issue as to whether the Petitioner had the requisite understanding of the quantity-of-drugs issue and other sentencing issues and asked that the sentencing hearing be adjourned and his client mentally evaluated. The Petitioner was questioned extensively by the Court and by his own counsel; subsequently, the Court found the Petitioner's difficulty with some of the fine points of the sentencing guidelines and with understanding why he was being treated differently than other people, were topics unrelated to competency. Sent. Hr'g Tr. at 52 -60. Determining that it saw no reason to doubt the petitioner's competency, the motion was denied implicitly. Sent. Hr'g Tr. at 60.

Clearly, counsel raised both issues before this Court, but not on appeal. Cause for a procedural default may be shown where counsel's representation rises to the level of a Sixth Amendment violation of the right to effective assistance. *Coleman v. Thompson*, 501 U.S. 722, 725 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). In order to demonstrate ineffective assistance of counsel, a petitioner show: 1) counsel's performance

---

³ The agent testified that the Petitioner admitted making weekly purchases from his supplier of ½ to 1 ounce of methamphetamine during the eight months he participated in the conspiracy. The probation officer calculated the lower amounts of the Petitioner's weekly purchases, added the 21 grams to this figure, and determined the Petitioner should be held responsible for buying 453.6 grams of methamphetamine.

fell below an objective standard of reasonableness and 2) counsel's unprofessional errors resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 6686-87 (1984). However, counsel has no constitutional duty to raise every nonfrivolous issue requested by a defendant, *Jones v. Barnes*, 463 U.S. 745, 751 (1983), and, certainly counsel is not ineffective for failing to pursue on appeal a frivolous issue, such as is this one.

Absent cause, the Petitioner has failed to overcome his procedural default and cannot obtain review for his second claim.

### III. **RULE 35(b) MOTION**

The Petitioner asserts the Government filed a motion pursuant to Rule 35(b), Federal Rules of Criminal Procedure, based on what it characterized as his "significant" and "continuing" cooperation. The motion was set for a hearing (Docket Entry of Mar. 20, 2003), but the hearing, apparently, was not held and no ruling on the motion was made because the Court determined it lacked jurisdiction over the motion since the case was on appeal. *Maynard*, 94 F3d. Appx. 287, at *290, 2004 WL 784135, at *2

Be that as it may, the pendency of a Rule 35(b) motion does not serve as grounds for relief in a § 2255 action. To prevail under § 2255, a petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 434, 428 (1962)). To obtain relief for non-constitutional errors, the record must reflect a fundamental defect in the proceedings which necessarily resulted in a complete miscarriage of justice or an egregious error violative

6

of due process. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied,* 517 U.S. 1200 (1996). Claim III cannot be properly characterized as a fundamental defect or egregious error which could serve as a basis for a remedy under § 2255.

IV. **MENTAL COMPETENCY ISSUE**

In this claim, the Petitioner asserts his attorney expressed doubts, during the sentencing hearing, about his client's ability to consult with him with a reasonable degree of rational understanding. Counsel then sought a mental evaluation for his client, but no psychological examination ever occurred. As in the preceding grounds, the Petitioner acknowledges that this issue was not raised on appeal.

Counsel's motion for a mental evaluation resulted in the following extended colloquy between the Court and the Petitioner.

>   THE COURT: Mr. Maynard, do you know where you are this afternoon?
>
>   THE DEFENDANT: Yes, sir.
>
>   THE COURT: Where are you?
>
>   THE DEFENDANT: I'm at the federal courthouse.
>
>   THE COURT: Okay. And what are we doing here this afternoon in this hearing?
>
>   THE DEFENDANT: Trying to determine whether or not I was a drug dealer, I reckon.
>
>   THE COURT: Okay. Do you know what the outcome of this hearing is supposed to be, at the end of the day what I am supposed to do?

7

THE DEFENDANT: You're supposed to determine whether or not I sold as many drugs as what everybody's saying.

THE COURT: Okay. Mr. Lanier, what is his role in these proceedings; what is he supposed to do:

THE DEFENDANT: He's supposed to try to help everybody understand what is going on. I mean...

THE COURT: What is Mr. Piper's role?

THE DEFENDANT: Mr. Piper is supposed to try to do the same thing. I was under the determination that—I don't know how to put it into words, Your Honor.

THE COURT: And what is my role?

THE DEFENDANT: You're to determine whether or not I'm guilty.

THE COURT: Has Mr. Lanier talked to you about the sentencing guidelines?

THE DEFENDANT: Yes, sir, he has.

THE COURT: Did you understand what he said?

THE DEFENDANT: Not to the degree of severity on either end. I mean, at the time of my PSI briefing, when my PSI officer came, Mr. Lanier and a probation officer both tallied up what they figured I would receive.

THE COURT: And you understood that?

THE DEFENDANT: It seemed— Everything they told me at the time seemed---- well, okay; it seemed right. Then when this quantity appeared, I don't—I still don't understand where it came from, Your Honor.

THE COURT: Okay. But you understand that the purpose of these proceedings this afternoon is to determine what type of sentence you should receive? You understand that?

THE DEFENDANT: Yes, Your Honor.

8

THE COURT: And you understand that a major factor in how much time you are going to receive is based upon what the drug quantity was that you were involved with? You understand that?

THE DEFENDANT: To a point, Your Honor, yes.

THE COURT: You understand that the more drugs somebody's involved in, the more time they get? You understand that?

THE DEFENDANT: After—No, I really don't. From what I've been shown on the guidelines and what the other people in this case were dealing with, I seem to be spending more time than them.

THE COURT: Okay. I appreciate that. And we aren't talking about your case in particular. But do you understand that, as a general proposition, the more drugs somebody's involved with, the more time they will get?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that?

THE DEFENDANT: Kind of.

THE COURT: Okay. You're having some difficulty understanding why you're being treated differently than other people? You don't understand that?

THE DEFENDANT: No, sir.

THE COURT: And you don't understand whey you are bing given credit for the drug quantity that's in you presentence report? You don't understand that?

THE DEFENDANT: No, sir.

THE COURT: And you don't understand the evidence that's come out today?

THE DEFENDANT: Not all of it, sir.

THE COURT: Okay, But you understand the purpose of these proceedings?

THE DEFENDANT: Yes, sir.

>   THE COURT: And you understand that Mr. Piper is the prosecutor?
>
>   THE DEFENDANT: Yes, sir.
>
>   . . . . . . . . . . . . . . . . .

Sent. Hr'g. T. at 53-56.

Following this colloquy, defense counsel also questioned the Petitioner, on the record, about his client's past psychiatric history and as to his understanding of his sentence. The petitioner maintained that he never had "understood the minimal participant part;" that, to him, a conspiracy was involving a high person down through a low person; and that he could not understand how he was "on the low end" but "not get a departure." Sent. Hr'g T. at 57-58. The Court, seeing no reason to doubt the Petitioner's competency, did not order a mental examination.

The test of defendant's competency to stand trial or be sentenced is whether he possesses sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has rational as well as factual understanding of proceeding against him. *Dusky v. United States*, 362 U.S. 402 (1960). As evidence to support his § 2255 claim, the Petitioner merely reiterates that which was before the Court at sentencing. Thus, even if this issue has not been defaulted on appeal, he would not be entitled to § 2255 relief with regard to his claim that he was incompetent to be sentenced. This is so because, under *Dusky*, the Court remains convinced the petitioner was competent to be sentenced on the basis of the evidence presented during the hearing.

10

Case 1:05-cv-00113   Document 2   Filed 05/04/05   Page 10 of 12   PageID #: 10

But more important and as acknowledged by the Petitioner, the competency issue was not raised on appeal. This constitutes a procedural default and a bar to § 2255 review, unless he demonstrates cause to excuse the default and resulting prejudice. *See Elzy*, 205 F.3d at 884.

The Petitioner contends, apparently as cause, that his lawyer had notice of his client's mental problems, but waited until the sentencing hearing to move for a competency evaluation. However, as the Court previously noted, counsel has no constitutional duty to raise every nonfrivolous issue on appeal. *Jones*, 463 U.S. at 751. "[W]innowing out weaker arguments on appeal" and focusing on the stronger issues is the essence of good appellate lawyering, and not evidence of ineffectiveness. *Id.*, at 752.

There is a total lack of support for this claim of cause. Nothing alleged demonstrates his attorney's performance was deficient with regard to the motion for a mental evaluation. Moreover, there is nothing to demonstrate prejudice since the evidence at the sentencing hearing did not establish incompetence and since the evidence in the § 2255 motion is derived, almost entirely, from the transcript of the hearing. Since there is no reason to believe the Petitioner was incompetent sentencing him without a mental evaluation, did not work to his "actual and substantial disadvantage" and did not infect the entire proceedings "with error of constitutional dimensions." *See Frady*, 456 U.S. at 170.

For the reasons indicated above, the Respondent will not be required to answer this § 2255 motion to vacate, set aside or correct sentence because all issues presented therein have been waived or, in the alternative, previously decided on appeal. Because it plainly

11

Case 1:05-cv-00113   Document 2   Filed 05/04/05   Page 11 of 12   PageID #: 11

appears from the face of the motion and the prior proceedings that the Petitioner is not entitled to relief, this motion will **DENIED** and the § 2255 case **DISMISSED**.

An appropriate order will follow.

**ENTER**:

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**